I can assure both parties we will look at the record in toto. The last case in the morning may come forward please. We are here today to address the proper scope of the limits of 28 U.S.C. section 1782 and in particular does section 1782 allow for discovery when there is no pending civil action, there is no pending criminal action, there is no contemplated civil action and there is no pending criminal investigation. All there is is a contemplated police report or some type of a complaint to be made to a public prosecutor to try to get that prosecutor not even to start a criminal case but to start a criminal investigation. The answer clearly is no. Based upon our research no court is ever granted a section 1782 discovery application where the applicant admits it has no ability to file a civil claim and there is no ongoing foreign criminal investigation which is the situation here. I want to highlight the consequences of an affirmance of this decision if that is what the court were to do. In that case, shareholders and minority shareholders all around the world who would have no basis to file any civil claims against their companies in their own countries could come to the United States and file a section 1782 action seeking discovery under the guise that they wanted to file a criminal complaint against one of the members of the board of directors in the foreign countries. The floodgates of 1782 are already open and they should not be opened wider. I'd like to cover a couple of the key facts in the case because I think they're important to understanding the framework. The applicants consist of one minority shareholder of a company based in Luxembourg called Asheron Portfolio Corporation and the other applicant is a minority shareholder of a minority shareholder of APC which I'm going to call Asheron Portfolio Corporation, APC. The allegation is that one of the members of the board of directors, Dr. Jean-Michel Paul, has an undisclosed secret ownership interest in a company that services APC. APC has been advised of this allegation and has considered it and has submitted a declaration from the chairman of its board of directors stating there is no merit to this allegation. So the alleged victim of the crime, which is the company, it's not these shareholders, the alleged victim of the crime is not the applicant seeking discovery and in fact is opposing discovery. Now the controlling standard in this case, which we don't agree with but we're not going to argue today, is from the consortio decision, which states that you have to have reliable indications of the likelihood that proceedings will be instituted within a reasonable time. And the facts of consortio are important because in that case, the applicant was the victim. It was the company that had been embezzled from and the applicant came forth with rock solid evidence. They had conducted an audit and they submitted a declaration based upon personal knowledge of the wrongdoing that had happened. And in that case, they had a right to file a civil claim immediately and they were going to do so. And if the civil claim succeeded, then they could file a direct criminal action. Your argument is that they're minority shareholders and they have no rights to file a civil action. I thought they were claiming some direct injuries in regards to reputation, et cetera. Yes, Your Honor. They admit they don't have any right to file a civil claim. So what they are arguing is they... I'm not sure they say that. I think they recognize that they have... Their rights to file claims as minority shareholders are less than the rights of the corporation itself. Okay. Let me explain that just briefly. In terms of just a pure civil claim, I think they've admitted they don't have that right for that reason. And plus, they've released every year at the yearly shareholders meeting, they sign a release of all claims. But they do claim that they can file some type of a complaint with the Luxembourg public prosecutor. And there's three different types of complaint. And two of them, they don't have any right to participate. And they don't control if the prosecutor starts an investigation. Like a denunciation. Yeah. The third one, they do claim that they have a right to actually cause the public prosecutor to start an investigation by filing a criminal complaint with a demand for civil damages. And as I understand, they claim they are participants and they have appellate rights if he refuses to go forward. That's the claim, Your Honor. There's a couple of variations on that too. They claim that their damages... And we've addressed that, saying that that's not sufficient under Luxembourg law, number one. And number two, it's even logically inconsistent because they're claiming the moral damage is being associated with this company, APC, once it's held to be criminally liable, which hasn't happened yet, which they're trying to dig up evidence to cause to happen. So they're trying to cause their own moral damage in the future. That's number one. But number two, the appellate rights, what they're talking about is when you file one of these claims, you're not filing it in a court. You're filing it with a public prosecutor, and the public prosecutor has to go through steps before the prosecutor can file a claim. And it has to go up to a different chambers. If they don't proceed, you can go up to a chambers and the chambers can say, well, no, you should go on. You should consider proceeding further. And that's the appellate right, is to challenge if the public prosecutor decides not to file a claim. So none of this is even getting to a proceeding. It's all discretionary with the public prosecutors if they even choose to go forward. Does that address your question? Okay. Fine. Okay. Getting back to the Consorcio case, I highlighted how strong the facts were there because this case is just the opposite. The company has not come forward with any claim, and the company is, in fact, fighting it. It's important to know, and the standard is you have to look for reliable indications, right? And in this case, the dispute is about a contract that was entered in 2009. That's when the conflict allegedly rose. One of the applicants, Mr. Bonet, was on the board then when he claims he discovered this conflict. He resigned. Luxembourg Law says when you resign from a board, you have to disclose any knowledge of wrongdoing. He said there was none. And then after that, the reason he resigned is he wanted to buy more shares in Asheron, which he did. He increased his shareholdings. And after that, he brought Dr. Jean-Michel Paul into his company, Furstenberg, and brought him in as a compliance officer. So to now say that Dr. Paul had a conflict of interest six years later, it doesn't make sense. Mr. Kalfan, who he got the email, he sent an email and said, hey, Eric, please confirm that we resigned out of protest for Dr. Paul. Well, Mr. Kalfan also, when he resigned, didn't disclose any wrongdoing, and within three months later gave a proxy to Dr. Paul to vote in any way he wanted because, quote, I trust him completely. And so if you're looking at reliable indications for what is happening here, is there really going to be a claim? Because that's what it comes down to. Is it really reasonably contemplated? And you have to look at, you have to get into the merits a little bit. You have to read the evidence presented to make a decision. And what's going on here in the background is four or five years later, after Dr. Paul and Mr. Bonet and Mr. Battalion have had a ton of other businesses together, they have a falling out, and litigation erupts between them. And Mr. Bonet is trying to extract a settlement, and he admits this in his declaration, and we cite it. He's trying to get Dr. Paul to buy his shares back at an above-market price, and Dr. Paul is refusing. And be that what it is, you know, they have their own disputes. In this contract, Latai's management fees are dependent on Dr. Paul's entity remaining on board, right? No. Latai has a number of other clients as well. So Latai's biggest client is here in Miami. Okay. The amount of Latai's management fees are affected by Dr. Paul's entity remaining employed. Is that a fair statement? I think maybe... Isn't that the whole allegation? Right. So I think... Isn't that the alleged conflict? I think one of the allegations is there's a suspicious clause in the Latai servicing agreement. And the clause says that Latai charges below market rates to Asheron. And Latai will only do that so long as Asheron Capital Corporation is the manager, and Asheron Capital Corporation's in London. Okay. So... Yeah. And that has been raised as an issue in the case. That clause was fully disclosed. It was actually voted upon and approved by some of the people on the applicant's side. And the whole negotiation of the Latai contract was Mr. Paul, Dr. Paul recused himself. He didn't have anything to do with it. The other board members negotiated. And they've explained the reason. It's a benefit to Asheron. It's a benefit to the applicants to have that clause. And the reason that Latai provides a reduced rate to Asheron is because Asheron Capital Corporation carries some of the burden in the servicing. And so Latai says, well, because it's not as expensive for us, we'll give you a lower rate. But if Asheron Capital Corporation and Dr. Paul pull out and they stop doing their share, then we have to raise our rates. So again, there's nothing nefarious, nothing suspicious here. This is just a matter of three prominent... Has he answered your question? Yes. Okay. I don't think we have any issue on appeal, do we, about the scope of the subpoena? As I understand it, you've already produced some documents. Is that correct? Yes, Your Honor. And about... Was that 1,000? 10,000? What have you produced so far in terms of volume of documents? We have produced as a... Let me just address it this way. What they're asking for... That's not what I asked you. Okay. Okay. I asked you some size of the volume. I know they can test in the district court whether it was adequate and they're moving to compel. Yes. So we produced like 150 pages initially. That's what I'm trying to get at. So far, all you've done is 150 pages. We did a recent production two weeks ago, which I don't know the volume was. It probably was another two or three hundred pages. Okay. It's that much. And you all are still contesting all of that for the district court? Yes, Your Honor. So the scope really here is not what the issue is on appeal. That's being handled down there? Yes, Your Honor. Okay. So there's not an objection. I think they had since 2009 or something. You all are still litigating about all that in the district court? Yes. Okay. So what we need to do is the threshold issue of the issuance of the subpoena. That's all we've got up here. Yes, exactly. Okay. Whether the statutory requirements were met. Right. Yes, that's it. Thank you. I think that clarifies exactly the only thing we need to decide at this time. Yes. I appreciate it. Thank you very much. I thought you reserved your ... Mr. Gluck. May it please the court. Warren Gluck of Holland and Knight on behalf of Appelli, Furstenberg Finance and Mark Battalion. With the exception of the reliable indications metric, we're going to have to disagree with This is a simple case that Judge Bloom got correct and it is one where this circuit has ruled time and again, as have the other circuits. The Congress has amended the statute specifically to encompass criminal investigations before charges are filed within the ambit of 28 U.S.C. 1782. The problem is, it's a very fine line between getting not too involved and trying to figure out one, is it possible to have this criminal proceeding with civil damages and whether there's anything nefarious going on that would trigger somebody being able to bring one of these things. It's a fine line. And he says that you can't bring this criminal action with civil damages because you're a minority shareholder. And that's the real crux of the issue. There are three types of proceedings that can be brought and we've submitted an expert declaration. Okay. The denunciation, you don't have any appellate rights, right? No. The denunciation, there is a right of appeal, but it is not a direct action in which they are a party in the same way the first two actions would be. The participation aspect is a little sketchy for a denunciation. As I get through the summary, I'm going to explain why Judge Blum got it right that even if it was a denunciation, this would qualify for 1782, but you're right, you don't need to get there because the first two actions clearly do. This is where the applicants are a party. And what they're saying is that no, they basically are saying we have a motion to dismiss. You don't have a right to bring it. Our criminal law expert, who was at the time the chair of the Luxembourg Bar Association, is saying you absolutely do. There is no dispute here that under the Luxembourg law, there is a caveat as to whether damages are direct or individual, but our clients have suffered reputational and moral damages that are separate and distinct from the company's damages, and that's the hurdle. It's no different than consideration here. You might think it's silly, oh, a $20 million contract is somehow more, is made valid by a dollar of consideration. That's the rule in Luxembourg. Can I ask, when they entered into this contract, this Latai contract that had this thing that, okay, you're going to get a good rate as long as you employ this other company where Dr. Paul is involved. Is that the point where Dr. Paul stepped back? No. No, Dr. Paul, in fact, Dr. Paul wasn't even involved at that point. To the extent that a comment was made by counsel here, Eric Bonet has testified under oath or submitted a sworn declaration that he had no idea about this Latai relationship at the time in 2009 when he was on the board. The crime in Luxembourg, by the way, is the mere fact that this was an undisclosed ownership relationship. That's the whole point. Was it disclosed? Was it disclosed that Dr. Paul was involved with this corporation who under this clause in the Latai contract said that keep that corporation employed and you get the lower rate? It wasn't disclosed and it's now denied. See, that's the thing. The ownership, the connection was obviously there, but they are expressly denying what's being alleged here, which is the secret and concealed ownership of Paul. Now going back to these first two direct actions, which is absolutely crucial, they're saying we have a motion to dismiss. Our criminal expert's saying it's a frivolous motion to dismiss. The bar here is so low. They've submitted treatises and a case law from their own interested expert saying you can't have these direct damages as the basis. And we're saying it's agreed, but we have other damages. And it's these very other entanglements that occupy about 75% of their reply brief that form the basis for those reputational and moral damages. They can't have it both ways. They can't argue that Dr. Paul and the applicants have been involved in all of these other business ventures together and then come back and say, oh, you have nothing outside the harm of an ordinary shareholder. That's the difference between this case and the cases they cited, like the Madoff case. Can I ask a question? You said that you have enough evidence to go forward right now. If the applicants wanted to, they could go forward. However, they have stated under oath that within 45 days of the close of this discovery, which is ongoing and which may be the subject of contempt proceedings next week, that they will immediately file this action unless, and this is the reliable indications, the evidence produced and the testimony wholly vindicates Mr. Paul, which is... So you're looking for this exoneration evidence. If you... I don't get this. If you think you have enough documents and all you're doing is looking for exoneration, why not file the proceeding and then you have an easy case for getting more discovery? And as I understand it, there's no limitation. You don't have to give all your evidence the first day. We want to make sure that the case goes forward, and it's that simple. The evidence... Oh, sorry. Is there any exposure if you make a mistake and file this? I think there may be an attorney's fees issue in Luxembourg. It's not like this jurisdiction where it's... The reason is to get evidence, you see, and this is the reliable indications. We have an ex-board member and a former Akron administrator. What we would like is to present the testimony and the documents in Littai's possession, a Florida company, and its Florida president to the prosecutor so that this case does go forward. That's what this is about. This is about buttressing that case, and in that sense, it's no different than consortia. It's the same case. They were looking to later file a criminal action, and that is what the appellants refused to accept, is that the act, the filing of those first two proceedings where the applicants are a party, that is the proceeding. It's not that the state prosecutor, the magistrate judge after that has to go then convince the prosecutor to go forward. But 1782 was amended in 1996 to make this investigative proceeding the proceeding for which 1782 governs. And that's why this is a standard case. That's why attorney's fees were awarded once, and that's why attorney's fees have been awarded again. This is a straightforward case under circumstances where Littai has engaged in an 18-month campaign to try to avoid this coming out. And yes, APC, the company, is denying the claim. That doesn't make it untrue, and that presupposes the merits. One thing I would like to get into, in fact, is the burden of proof and the standard of review here. We have no dispute that the standard of review in terms of interpreting the 1782 statute is de novo, but Judge Bloom, the district court, has made a series, an entire host of credibility and factual determinations concerning the strength of the allegations at issue, as well as the credibility of the parties in terms of actually bringing this case forward. And those conclusions, those factual conclusions, are reviewed under the higher abuse of discretion and clear error standards. I would like to, for a minute, get into the issue of this denunciation. There is no dispute between the parties that the third form of action, a denunciation, is available. What they say is that the denunciation proceeding does not qualify as a proceeding under 1782. That's Judge Bloom found differently. She said it does, and she's right. Because a denunciation is a proceeding. There is a right of appeal. And in Luxembourg, it's not opening up the floodgates. In Luxembourg, the system is different. When you file a denunciation, it's before a prosecutor who is a member of the judiciary, not the executive branch. That's the expert testimony that you are seeing in the record. And because of that, it's the natural extension of intel. In fact, that's what Judge Breyer said in his dissent in intel, because he didn't like the decision. But everybody knew what intel meant. He said, some countries allow a private citizen to ask a court to review a criminal prosecutor's decision to prosecute. On the majority's reason, that foreign private citizen could ask an American court to help the citizen obtain information. He saw it coming. This is, this denunciation part, this is what Judge Bloom got right. The denunciation component is exactly what intel gave rise to. So there was nothing wrong with that decision. I want to go back. It was 2013 that Dr. Paul claimed he had potential conflict of interest and didn't want to be involved in the contract approval. So was this term in the Littai, when did this term in the Littai contract come in? It was in originally, and now, I still can't say it, under, there is an NDA. Was it in there before 2013, undisclosed? Yes. All right. Yes. And, but the crime here is that the money, the 70% of these fees, millions and millions of dollars that is purportedly being paid to a third party, even if it's a third party managed and owned by his best friend, that is totally different than it going into his pocket. That is a crime, and it's a serious crime. The notion that a prosecutor's not going to inform somebody of the decision is ludicrous. This is a publicly traded Luxembourg company and a serious case. When they say they have a motion to dismiss, what we would call a motion to dismiss the two direct actions, for which he says, I'm not going to even argue that these two direct actions don't qualify. They're just saying we can't file the direct actions. We have competing declarations. Judge Bloom got that point right again. What she said is, I'm not going to decide that they can file it or that they can't file it because doing either one of those would prejudge on Luxembourg law the outcome of that motion to dismiss. What Consortio says, teaches, as well as a whole bunch of Second Circuit precedent, is that predicting the outcome of merits defenses under foreign law, which is what they're asking this court to do, is inherently unreliable and in fact counter to the scope of the 1782 process. Now, I don't think there's any question that there's a floor. Obviously, you can't say anything. You can't just willy-nilly say, I'm going to file a proceeding. But this case is so far above that. What we have is the chair of the Luxembourg Bar Association saying, I'm stepping over the burden. I'm going to personally file this case. On these facts, where there are these separate associations, in London, Battalion became a consultant. In Luxembourg, that's where all the rest of the litigation is. The Furstenberg entities are intertwined and wound up with Paul. That's where these distinct damages come from. As soon as you have distinct damages, you're open for the first two proceedings where there is no dispute in this room that the 1782 is absolutely warranted and justified. As soon as you're there. And we have them easily. We have them easily. I would just like to read from Mr. Grasso's declaration. In this case, it is clear to me that applicants can allege material financial reputation and moral damages in relation to the allegations against Paul. These will include not merely the act of purchasing and selling the shares. That's what they're saying. But their reputation will damage with their association with Paul. In other companies, in Luxembourg and London, there's a web of 20 companies in which they're involved. And in the hedge fund world, who you associate with matters. And they didn't know until months before this 1782 application was filed that Paul had engaged in this serious wrongful conduct. And when they did learn it, they acted immediately. The last point I'd like to touch on for two minutes is appellate jurisdiction. This court asked us to brief it. And I think we've presented some arguments as to why this jurisdiction may be lacking. There's only one point I'd like to raise here today. Since that briefing, Judge Bloom has issued a second order, a second order on the motion to compel, which this court has. They've now appealed that order. So now are there two final orders? Is that even possible? There are fireworks below, to say the least. That's the only point I would make on appellate jurisdiction. Is it even possible to have two final orders at the same time? I think my opposing counsel may address it. In summary, the allegations are strong. They're stronger than they were, by the way, in the O'Keefe case, which I know you decided, Judge Hall, where the allegations were about defamation. And it was one person saying the person had said swear words. Here, we have two former board of directors, excuse me, one former board of director and the former administrator, all saying the same thing, and we're not making it up. That's what they're trying to say. You're creating your own harm. This was a badly kept secret that our applicants figured out in 2015 and took immediate action as a result. What is ruled on in the second order you're talking about? Is that just on the motion to compel, because they're not producing everything you say they should? Producing everything and producing the witnesses. Okay, and what's the date of that order? Is it in the same case? The same . . . This court has a copy. The date is going to be late in November. This year? This year. Okay. All right. Your time has expired.  I think counsel's argument . . . Do we have jurisdiction? Absolutely. Absolutely. Why? It's often the case that after a final judgment is entered that there are further proceedings. There'll be further discovery and execution or things of that sort, and so that doesn't divest the court of jurisdiction by any mean. What's happening here is that what the applicants are seeking does not exist. There is no secret ownership, so there's no documents to produce showing it, and they're moving to compel. This is, from our perspective . . . I recognize they believe they have a right to do this, but from our perspective, this is pure harassment, but I want to address on the merits of this appeal something which I think is very significant. Counsel, in response to a question, stated that this provision was not in the agreement in 2009, and in fact, that's absolutely wrong, and that's a key issue. If you turn to the record on appeal, tab 11, 31, 32, 33, it's the declaration of the chairman of the board of Asheron who specifies that this provision was in the agreement in 2009, that Dr. Paul, at that stage, had recused himself from participating in the contract negotiation, and that Mr.  and signed it. We have their signatures here on the board minutes, and so that's the problem we face in these proceedings. If somebody comes in and submits declarations that are just not accurate, and then the judge will issue an order allowing them to dig into your electronic data and depose your people, and it's incredibly intrusive, incredibly expensive, and you're an innocent third party being dragged into a dispute with people in a foreign country, that's why you have to have limits on this statute, and counsel also said that . . . Well, you're doing business with people in a foreign country. Yes. You're getting monthly fees from the people in the foreign country. Yes. I mean . . . And I'm not . . . They're all connected.  If there was a meritorious . . . You're just saying like we've been drug into something in a foreign country. No, what I'm saying drug into is the other disputes among those parties where they're trying to use this as leverage to settle. A third party they're trying to get discovery from. You just happen to be in the United States. You could have been over there. We happen to be the target because the U.S. . . . You just happen to be here. What's the difference? You could have been over there. Right, and the U.S. has this statute that's unique in the world, but going back to the critical issue in this case is the court has to put limits on this. There has to be clear guidelines as to when something like this can be pursued, and it's not when there's a party who merely wants to file a police report, file a denunciation with a public prosecutor. If there was a criminal investigation started, there's no doubt . . . Maybe Congress needs to amend the statute to say something. All it says is in contemplation of proceedings. That's about all it says, right? Is that the language? Actually, it does not say that. I think that the Supreme Court said that, and in that context . . . Right, so that's the standard. But in that context . . . They can tighten up the standard, can't they? Well, and perhaps the Supreme Court should do that, but the circuit courts need to look at that Intel decision because that was a case where there was an ongoing criminal antitrust investigation by the European Union that was adjudicatory in nature, and there was appellate rights in nature, and that's why . . . That provided the basis for saying that you can seek evidence in these circumstances, and since then, the courts have expanded that broadly to let the parties do it in where there is no ongoing case, but the party claims an intention to file one. And I agree, that's not the issue before this court to change the law on this day, because here, all we're concerned with is the consorcio standard and the reliable indications. And I think if you look at this evidence, if you really read these declarations, you'll see that there are numerous people from Asheron that are disinterested who have submitted declarations with documents showing that this stuff was all disclosed and that the applicants themselves not only saw it, but signed it and agreed to it. So you're saying disclosed from the first Latai contract? Yes, in 2009. Dr. Paul said, I have a close business associate of Jean-Michel . . . of Jean-Eric Samuel, and because of my close business association, I do not want to be in this contract. Everybody knew it, everybody was okay. Other people negotiated the contract without involvement from Dr. Paul. That's exactly the way it's supposed to be done. Thank you. Your time has expired. The case is submitted. The court will be in recess.